United States District Court
For The District of Columbia

RECEIVED
MAR 13 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| William Moore | Civil Action No. 05-2031 |
|     Plaintiff | PLF |
| vs. | |
| Frederick Motz ET. Al | |
|     Defendants | |

## PLAINTIFF DISPOSITION OF ALL DEFENDANTS OPPOSING A TEMPORARY RESTRAINING ORDER IN ACT WRONGFULLY COMMITTED UNDER ARTICLE VI

Plaintiff, cannot suffer any more irreparable harm of likelihood, as set forth by the United States Supreme Courts ruling in the United States v. Georgia No-04-1203, SS122021, 12101(b) (4) gives Moore the right to file suit in any Federal or State Court of Competent Jurisdiction.

Defendants has cited that their action to violate The Constitution arises under the Bivens v. Six unknown Federal Bureau of Narcotic, 403 U.S. 388(1971). Citing immunity, Moore's actions are based on racism, due process, access to the court, tainted by procedural fraud, mail fraud, obstruction of justice, court rendering court orders falsifying unjustified proceeding, extorting money due Moore under The Fourth Amendment, ball point pen robbery by judges sworn to uphold The Constitution, whom committed these wrongs for political racism. Governmental and City Municipales on record.

The highest court of Maryland has collaborated, as well as news articles affirms Moore's

context.

The elements of an injunction serves in the best interest of the public. The acts here were committed by the courts and those sworn to uphold The Constitutional Mandate. The defendant has shown no right of law to commit these crimes.

### DECEITFUL FRAUD TACTIES USED TO SUBERT THIS PROCESS

Defendant claim the process of service was improper, sure it is when contempt measures are used such as in this case. On October 24, 2005 defendants Motz, Quarles and Cannon received the complaint and summons required by the court rules, after reviewing the complaint, all defendants returned to plaintiff, with a certified mail service. The court stamped the document on October 24, 2005, clerk U.S. District Court, you see these games played does not show fair play. See attached as same first sheet. Defendants cites several D.C. Circuit Citations and Codes, but none tips the balance of scales of justice in reason an injunction should not be issued. All of the incited citations supports Moore's injunction relief, how much more is needed than the facts and The Supreme Law of the Land, and under authority judges in every state shall be bound thereby, anything in the Constitution or Law under Article VI, "Supremacy Clause." See Venue in "Orderly Administration of Law." International Shoe Co. v. Washington, 326 U.S., at 319 66 S. CT., AT 159.

### STATUE OF LIMITATIONS

Fair play is no where played in plaintiff claim, THERE is no limitation in a fraud, U.S.C SS1983 nor action should the court entertain such. See Missouri, Kansas & Texas R. Co. of Texas v. May, 194, U.S. 267, 270, 24 S. CT. 638, 639, 48 L.E.D. 97 (1904) under the bill of Rights Act.

Defendants conduct has amounted in Crimes "<u>United States v. Lee</u>", 106 U.S. 196, 219, IS. CT. 240, 259, 27 L.E.D. 171 (1882) holding proper jurisdiction to Federal Courts by Congress, see 28 U.S. C. SS 1331 (A). Defendants does not show in plaintiff duration but one accord, he is a negro, in reality a nigger, they labeled Moore as a former prisoner without basis, they asked the court not allow an appeal, set forth in an order, they claim plaintiff was targeting unlawful legal and civil rights. Indeed, an satisfied that the Supreme Court of the law of the land, did not show any bias, under SS5 empowered by Congress and Article II money damages. These acts are direct or indirect.

## BACK GROUND OF PLAINTIFF

All of the defendants has set forth from Moore's pleas from North Carolina to Maryland in citing good deed as to how the acts occurred and how they violated The Constitution over two decades, because Moore was a negro, and the Civil Rights Act was passed March 1, 1875, entitled "An Act to Protect All Citizens in their Civil and Legal Right." The Fourteenth and Fifteenth Amendment are controlling in Moore's likelihood for a temporary restraining order, and the only remedy left would be the grave yard or the defendant grave yard dead, a remark attached to Moore's complaint and exhibits, as one Senator claim discrimination is long gone and grave yard dead during remarks made by Senator Trent Lott of the late Senator Strom Thurmond's birthday party.

Why would anyone want to proceed in a racial judicial system. In light of Moore's likelihood is of great public interest, this affect all citizens, defendant counsels seeks this court to ignore Congress. The gravity is that no one can rely on The Fourth Circuits Arenas Decrees or Rules, Procedures, Provision of Manifested Laws. See F.R.C Pro Rule 106-5, (A) that defendants Schemes and Artifices to defraud, (B) made untrue statements of

material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading, or (C) engaged in acts, practices and course of business as fraud or deceit. The logical relationship of Moore's claim is libel and malicious abuse of process see in <u>Moore v. New York</u> cotton exchange, 270 U.S. 593, 610, 46 S. CT. 367, 370, 70 L.ED. 750 (1926). All so Moore's interpleaded claims are proper 28 U.S.C. SS1335 (Referred to as "Statutory Interpleaded"). 28 U.S.C. SS1331 (A) empower a Federal Court to grant equitable relief for all areas of the subject matter jurisdiction money damages under Title II and of all class of legal protected interest such as restrainant embraced under the Forth Amendment.

## CONCLUSION

Therefore, defendants Alpha & Omega of Judicial abuses cannot be based on perception of racism, but of the law under ArticleVI and a temporary restraining order would appraise the courts that immunity is abolished, concede, Moore has suffered cruel and unusual punishment not barred of immunity, set forth of precedent laws January 10, 2006 Supreme Court. This entire proceedings of those with authority has not assumed the "Honest and Actual Antagonistic Assertion of Rights to be adjudicated essential to the integrity of judicial process." <u>United States</u> v. <u>Johnson</u>, 319 U.S. 302, 63 S. CT. 1075 87 L. ED. 1413 (1943). The citizens deserves this injunction in which several of them violated The Collateral Bar Rules.

Due to these judicial governmental and municipal perceptions, Moore has been deprived of his medication, and due to these monetary claims of his livelihood.

*William Moore* (signature)
William Moore
2428 Greenmount Ave
Baltimore, MD 21218

## CERTIFICATE OF SERVICE

I _[signature]_ hereby attached pleading in revelation for my corroborated temporary injunction and service made the same on:

This _9TH_ of March 2006.

       Gloria Wilson Shelton
       Assistant Attorney General
       200 Saint Paul Place, 19th Fl
       Baltimore, Maryland 21202

       Martin O'Malley
       Sheila Dixon
       100 N. Holliday St
       Baltimore, MD 21202

       Kenneth Wainstein
       Craig Lawrence
       John Henault
       United States Attorney
       555 4th Street, N.W.
       Washington, D.C. 20530

       Roy Cooper
       David Blackwell
       P.O. Box 629
       Raleigh, North Carolina 27602

# DOCUMENTS

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _[signed]_  ☐ Agent  ☒ Addressee

B. Received by (Printed Name)   C. Date of Delivery
                                 10/24/05

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

1. Article Addressed to:

). Quarles
tates District Court
t Lombard Street
e, Maryland  21201

3. Service Type
   ☒ Certified Mail
   ☐ Registered
   ☐ Insured Mail
4. Restricted Delivery

2. Article Number (Transfer from service label)
7004 0750 0003 4967 9652

PS Form 3811, February 2004   Domestic Return Receipt

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

A. Signature
X _[signed]_

B. Received by

D. Is delivery ad
   If YES, enter

1. Article Addressed to:

**Frederick Motz**
**United States District Court**
**101 West Lombard Street**
**Baltimore, Maryland  21201**

3. Service Type
   ☒ Certified Mail   ☐ Express Mail
   ☐ Registered       ☐ Return Receipt for Merchandise
   ☐ Insured Mail     ☐ C.O.D.
4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number (Transfer from s...)
7004 0750 0003 4967 9632

---

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _[signed]_  ☐ Agent  ☒ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

1. Article Addressed to:

Felicia Cannon
U.S. District Court
Clerks Office
101 West Lombard Street
Balt, MD 21208

3. Service Type
   ☒ Certified Mail   ☐ Express Mail
   ☐ Registered       ☐ Return Receipt for Merchandise
   ☐ Insured Mail     ☐ C.O.D.
4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number (Transfer from service label)
7004 0450 0003 4967 9623

PS Form 3811, February 2004   Domestic Return Receipt

Sheila Dixon )
100 North Holliday Street )
Baltimore, Maryland  21202 )
 )
Roy Cooper )
North Carolina Attorney General )
9001 Mail Service Center )
Raleigh, NC  27699-9001 )
 )
Joseph Curran )
Munsey Building )
Calvert & Fayette Street )
Baltimore, Maryland  21202-1918 )
 )
Felicia C. Cannon )
United States District Court )
101 West Lombard Street )
Baltimore, Maryland  21201 )

OCT 2 4 2005

# COMPLAINT

### FACTS, RULES, PROCEDURES AND PROVISIONS

### Pursuant To The Writs Act of 28 U.S.C.§ 1615

1. Plaintiff, William Moore, proceeding in proper person, proceeding in commitment of procedurals of two decades, set forth of Racial/Ethnic Fairness of the United States Fourth Circuit Jurisdictions, of decrees, procedurals, provisional, rules and commitments.

2. The defendants action was in concert of participation, direct or indirect of collusion of City Governmental officials, (State

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
WASHINGTON, D.C.

WILLIAM MOORE, Plaintiff )
2428 Greenmount Avenue )
Baltimore, Maryland 21218 )
)
　　　　v.　(410) 243-9534 )
)
Frederick Motz   Defendant, et. al )
United States District Court )
101 West Lombard Street )
Baltimore, Maryland 21201 )
)
William D. Quarles )
United States District Court )
101 West Lombard Street )
Baltimore, Maryland 21201 )
)
Albert N. Moskowitz )
Criminal Civil Rights Division )
950 Pennsylvania Avenue, N.W. )
Washington, D.C. 20530 )
)
Christ Letkewicz )
Criminal Civil Rights Division )
950 Pennsylvania Avenue, N.W. )
Washington, D.C. 20530 )
)
J. Harvie Wilkinson, III )
United States Appeal Court )
1100 East Main Street )
Richmond, VA 23219-3517 )
)
Samuel W. Phillips )
United States Court of Appeals )
1100 East Main Street )
Richmond, Virginia 23219-3517 )
)
Patricia S. Connor )
United States Court of Appeals )
1100 East Main Street )
Richmond, Virginia 23219-3517 )
)
Martin O'Malley )
100 North Holliday Street )
Baltimore, Maryland 21202 )

FILED ENTERED

OCT 24 2005

# Maryland judge named to U.S. Court of Appeals

## Andre Davis chosen by president to fill 4th Circuit vacancy

*By* GAIL GIBSON
SUN STAFF

President Clinton nominated U.S. District Judge Andre M. Davis yesterday to fill the 4th U.S. Circuit Court of Appeals seat left vacant by the death of Francis D. Murnaghan Jr., whom Davis clerked for two decades ago.

If his appointment is confirmed by the Senate, Davis, 51, of Ellicott City would become the first black member of the court. But his nomination faces an uncertain future, coming just weeks before the presidential election and just days before Congress recesses for the year.

Still, colleagues praised Davis as the right choice for the Richmond, Va.-based court, which hears appeals of federal cases from Maryland, Virginia, West Virginia, North Carolina and South Carolina.

J. Frederick Motz, chief judge of the U.S. District Court in Baltimore, called Davis a "first-rate judge," whose legal interests include issues as varied as correctional reform and the impact of human genome research on the law.

"I think he would be a splendid [See Davis, 2B]

[Davis, from Page 1B]

appointment," Motz said yesterday. "I know the only regret around here is we would lose a tremendous colleague."

University of Maryland law professor Douglas L. Colbert called Davis the "ideal nominee to break through the 4th Circuit's historic racial barrier."

The 4th Circuit has the largest African-American population of any federal circuit court territory — about 23 percent of residents in the five states the court encompasses are black. But it is the only federal circuit court that has never had a black member.

Davis was attending a conference out of town yesterday and could not be reached to comment on his nomination.

A Baltimore native, Davis earned his undergraduate degree at the University of Pennsylvania in 1971 and his law degree from the University of Maryland in 1978 after serving three years as director of the Baltimore Urban League.

Davis clerked for Maryland U.S. District Judge Frank A. Kaufman and for Murnaghan in the 4th Circuit. Davis later worked for the Justice Department's Civil Rights Division in Washington, then returned to Baltimore to work as a federal prosecutor.

Davis worked in private practice and taught at the University of Maryland law school before becoming an associate district judge in Baltimore in 1987. He served as a judge in Baltimore Circuit Court from 1990 to 1995, before his appointment to federal court.

Among his more prominent decisions, Davis struck down a Baltimore law last winter requiring that 20 percent of the city's public works contracts go to minority companies. Davis ruled that the law violated the 14th Amendment's equal protection clause.

OCTOBER 7-02

Wednesday, Dec. 18, 2002 : The Sun

## Pledge to blacks may force liberalized GOP agenda

*By* JULIE HIRSCHFELD DAVIS
SUN NATIONAL STAFF

WASHINGTON — With Trent Lott's post as Senate majority leader in jeopardy and Republicans seeking to limit the political damage, President Bush and his party face unexpected obstacles to enacting their agenda in the next Congress.

When Lott told Black Entertainment Television on Monday that "as majority leader, I can move an agenda that would have things that would be helpful to African-Americans," he made a pledge that could haunt Republicans.

* * * Lott's promise could endanger, for example, the party's prospects for confirming conservative judges. It could give Democrats a chance to push a more liberal agenda that strengthens civil rights measures and aids low- and moderate-income Americans.

And his surprising declaration in the interview that he backs affirmative action "across the board" conflicts not just with his own voting record but also with the views of some of the 50 other Senate Republicans.

* * * Many are just as conservative as the Mississippi senator who has been their leader since 1996, and would oppose any effort to turn the Senate away from their conservative priorities.

As he fights to keep his leadership job — perhaps even his seat in Congress — Lott has put his party in a difficult position. His plight has   [See Lott, 10A]

drawn unwanted attention to the voting records of Republicans who have received low grades from minority advocacy groups. It has also set off intense jockeying for a possible bid to replace Lott as majority leader.

"It is about actions more than words," said Lott during the 30-minute interview on BET, in which he argued that he should assume the post of majority leader in January as planned. "I can move an agenda that would have things that would be helpful to African-Americans and minorities of all kinds, and all Americans, but specifically aimed at showing African-Americans that they have particular concerns and needs."

## Apologies not enough to save majority leader after race-tinged remark

## 'Party of Lincoln is healed'

## Tenn. lawmaker has conservative credentials

*By* JULIE HIRSCHFELD DAVIS
SUN NATIONAL STAFF

WASHINGTON — Sen. Trent Lott of Mississippi quit as Senate Republican leader yesterday, yielding to a political furor over his racially charged comments, and Sen. Bill Frist of Tennessee quickly garnered enough support to become majority leader.

Lott's abrupt resignation yesterday morning — after he had insisted for days that he would not surrender his post — opened the floodgates for public endorsements of Frist. The Tennesseean is a close ally of President Bush and is regarded as a presidential prospect.

At a 100th birthday party for retiring Sen. Strom Thurmond on Dec. 5, Lott said the nation would have been better off had it elected Thurmond as president in 1948, when he ran on a platform that embraced racial segregation.

With criticism raging, Lott apologized numerous times and promised, as majority leader, to pursue causes important to African-Americans, including affirmative action. But with the White House and Republicans fearful that the uproar would hurt their efforts to win over minority voters, the pressure built steadily for Lott to resign.

### "Those days are gone"

"This is not an incidental moment; it is a historic moment," said Sen. George F. Allen of Virginia, one of Frist's most fervent supporters and his successor as head of the National Republican Senatorial Campaign Committee.

"This is a day," Allen said, "that the United States Senate, with Trent Lott's resignation, has buried, graveyard dead and gone, the days of discrimination and segregation. Those days are gone and gone forever."

Frist issued his own statement, calling Lott's decision "selfless," and saying he was "saddened for Lott and his family."

"We have a unique opportunity to accomplish great things for America during the next few months," Frist said in the statement, which did not mention his candidacy.

* * *

* * *

The Sun : Wednesday, Jan. 21, 2004: Page 3A

9

# Bush nominates Allen again for 4th Circuit appeals court

**President's action is sure to re-ignite clash with Md. senators over vacancy**

By LAURA SULLIVAN
SUN NATIONAL STAFF

WASHINGTON — President Bush re-nominated Claude A. Allen for a federal appeals court seat yesterday, putting the conservative Virginian back in the spotlight and re-igniting a battle that pitted Maryland's two Democratic senators against the White House last year.

Allen was nominated last spring to fill a vacancy on the U.S. Court of Appeals for the 4th Circuit, formerly held by Francis D. Murnaghan Jr., a liberal from Baltimore who died in 2000.

Sens. Paul S. Sarbanes and Barbara A. Mikulski of Maryland said yesterday that they would again raise vehement opposition to Allen's nomination on the grounds that the seat he would fill has traditionally been held by a Marylander.

"If Maryland loses a seat, we lose a voice," Mikulski said. "I will not stand by and let this happen. I will continue to stand with Senator Sarbanes and oppose this nomination."

Their assertion that the vacancy rightfully belongs to Maryland is not the only argument against the Allen nomination. The 4th Circuit — which is based in Richmond, Va., and covers Maryland, Virginia, West Virginia and the Carolinas — is dominated by conservative judges, mostly from Virginia and South Carolina.

During heated confirmation hearings, Democrats on the Senate Judiciary Committee portrayed Allen as a conservative ideologue with a thin legal resume. But Republicans, who control the committee, countered that such criticism was groundless and amounted to an effort to stall the proceedings and doom the nomination.



RICHMOND TIMES-DISPATCH
**Claude A. Allen is a deputy secretary in the U.S. Department of Health and Human Services.**

The struggle over Allen's nomination is part of a broader battle between the administration and Democrats in Congress, who have blocked some of Bush's judicial choices.

Democrats complain that the president is seeking to reshape the judiciary with hard-line conservatives who don't reflect mainstream thinking. Republicans argue that Democrats want to deprive Bush of his constitutional prerogative to appoint judges who reflect his conservative philosophy.

The White House cast Bush's re-nomination of Allen as a legitimate means of carrying out his right to nominate a qualified candidate of his choice.

Erin Healy, a White House spokeswoman, said, "Allen is well-qualified. He has extensive legal experience in the state and federal government."

Through a spokesman, Allen declined to comment.

Sarbanes and Mikulski, as well as Democrats on the Judiciary Committee, hoped the dispute over Allen had ended when the congressional session did in December. The White House and Republican committee members failed to get the nomination out of the committee and to the full Senate for a vote before Congress adjourned.

Other top Democrats say they will stand behind Sarbanes and Mikulski, who have thrown their weight behind keeping Allen off the 4th Circuit.

"The Maryland senators feel strongly that the Maryland vacancy on the 4th Circuit should be filled by a Marylander," Sen. Patrick J. Leahy of Vermont, the senior Democrat on the committee, said in a statement. "This administration's callous treatment of judicial nominations and its exploitation of them for partisan political purposes demonstrates a complete disregard for the need to preserve the independence and impartiality of the federal courts for all."

Allen, 43, has been deputy secretary of the Department of Health and Human Services since he was appointed in 2001.

Born in Philadelphia, Allen received his law degree from Duke University and later worked as an aide to Jesse Helms, the former North Carolina senator.

No mandate allots a specific number of seats on a federal court to each state. But historically, seats have been apportioned based on population.

Sarbanes and Mikulski argue that Maryland makes up about 20 percent of the population of the circuit's jurisdiction and therefore should have 20 percent, or three, of the seats on the 15-member court. Two judges already on the 4th Circuit are from Maryland.

Yesterday, Sarbanes vowed to renew the fight.

"Simply put, nothing has changed," he said. "We remain very much opposed to taking a seat on the 4th Circuit away from Maryland."

*Sun staff writer David L. Greene contributed to this article.*

TEMPORARY RESTRAINING ORDER

# Grand jury decries 'arrests

## Lack of charges in many city cases noted; report's two dozen recommendati[ons]

BY JULIE BYKOWICZ
[SUN REPORTER]

A Baltimore grand jury is calling for the number of city arrests that fail to result in criminal charges to be cut in half, saying such arrests erode public confidence in the Police Department, according to a report released yesterday.

The report gives about two dozen recommendations, but few are specific. One example: "Improve the quality of narcotics arrests." One recommendation was to reduce "arrests without merit" — an apparent reference to arrests that don't result in charges — by at least 50 percent before the end of this year.

[Please see REPORT, 8B]

"If the staggering number of arrests is to be validated, the percentage of arrests without merit must be drastically reduced," the report says. The jurors also said that frequent police stops of residents is an approach "bordering on violating a person's constitutional rights."

The panel of 23 grand jurors that met from September to January was asked by a Baltimore Circuit Court judge to

REPORT [From Page 1B]

The report cites a state Department of Public Safety and Correctional Services report that 21,721 African-Americans in Baltimore were arrested but not charged between April 2004 and March 2005. Grand jurors said this number shows that "countless people ... have been harassed."

Lt. Paul M. Blair Jr., president of the city police union, had not read the report, but he said that the recommendation to make fewer arrests conflicts with what officers hear at neighborhood meetings where residents complain about quality-of-life issues.

"Can they tell us which neighborhoods we should stop making arrests in?" Blair asked. "It sounds like it was a waste of paper if that's all they came out with."

Matt Jablow, a Police Department spokesman, said the phrase "without merit" does not make sense. "Officers are not allowed to make arrests without merit," he

"address the lack of confidence that exists between many members of the public and law enforcement."

The grand jury appears to have done its research by reviewing media reports and arrest statistics, as well as speaking with each other and with "several" residents, though the report does not say how many. Grand jurors talked to one person from the Police Department, the head of education and training.

said. "There has to be probable cause, and that is merit."

If the grand jury is referring to reducing the number of arrests that fail to result in criminal charges, Jablow said, "we share that sentiment." He said the department has taken steps to improve training and report-writing.

The percentage of arrests that fail to generate charges has decreased from 23 percent in December to 14 percent last month, said Kristen Mahoney, chief of technical services for the city Police Department, referring to public safety statistics.

The main function of a grand jury is to decide which criminal cases warrant indictments. Among the cases handled by this grand jury were the indictments of three Southwestern District officers. One officer is accused of raping a woman brought to the station house in handcuffs, and the other two are accused of doing nothing to stop it.